## Hugh Lynch & Co. *v.* C. P. Leckie, Sheriff, et als.

Where the plaintiff in execution instructs the Sheriff to make a seizure, which renders it necessary for the Sheriff to retain the writ beyond the return day, in order to effect the sale, he will not be liable for his failure to return it on the return day.

In an action against a Sheriff, by the plaintiff in execution, for releasing a seizure, the Sheriff cannot plead the illegality of the seizure in justification of the release, for it was his duty to make a legal seizure. But the subsequent conduct of the plaintiff may amount to a ratification of the release and thereby relieve the Sheriff from liability.

Before releasing a seizure which he has already made, and accepting a surrender of property pointed out by the defendant in execution, it is the duty of the Sheriff to use due diligence to ascertain whether the property offered to him is in such a condition as to afford a reasonable prospect of its being made available to satisfy the writ in his hands,

A Sheriff who releases a seizure made under one writ, and gives an illegal and unjust preference in favor of another, and a subsequent writ, will be liable to the plaintiff in the first execution.

C. P. 629. C. P. 767.

APPEAL from the District Court of the Parish of Rapides, *Cushman*, J. *W. B. Lewis*, fer plaintiff. *J. Thomas*, for *Dennistoun & Co.* *H. B. Kelly*, for *Leckie*, defendant and appellant. *Hyams*, for sureties and appellants.

OGDEN, J. This is an action to render a Sheriff and the sureties on his official bond, liable for the amount of a judgment, which the plaintiffs aver, by the neglect and various acts of malfeasance on the part of the Sheriff, they have lost all chance of recovering.

It is necessary to state many of the facts disclosed by the record, to show clearly the points which we are called on to decide.

The plaintiffs obtained a judgment against *James A. McWaters*, for $2452 73, and interest. The judgment was rendered on the 27th of May, 1851—an execution was issued thereon and placed in the hands of the defendant, *Leckie*, as Sheriff, on the 11th of November, 1851.

*A. & J. Dennistoun & Co.*, who were the factors of *McWaters*, obtained two judgments against him in May, 1851. One of these judgments was for

H. LYNCH & Co.
v.
LECKIE.

$11,247 57, and interest, and the other for $40,000, with the benefit of a special mortgage on the plantation and slaves of McWaters, in the parish of Rapides. It appears, that besides these judgments, McWaters was indebted to the Dennistouns in other large amounts, and that they held other mortgage claims against his property. No executions were issued on the judgments in favor of A. & J. Dennistoun & Co. until the 2d of January, 1852; and the proceedings of the Sheriff under the execution, first placed in his hands by the plaintiffs, anterior to the issuing of the execution in favor of the Dennistouns, were as follows: On the 11th of November, 1851, he made an actual seizure of sixty barrels of molasses, and, what is called by the defendants, a paper seizure of one hundred and seventy hogsheads of sugar, belonging to the defendants. The Sheriff states in his return, that he had not seen the one hundred and seventy hogsheads of sugar, but that he made the seizure on the instructions of the plaintiffs, and on the same day it appears, he notified McWaters of the seizure, and that, on the 13th of November, McWaters claimed the privilege of pointing out to him the property he wished to be seized, which consisted of a large plantation, and negroes, &c. The Sheriff thereupon released the seizure which he had made of the personal property, and on being told by the plaintiffs' counsel that he would be held responsible, he replied that he would take the responsibility, and that he was indemnified. The plantation and slaves were affected by special mortgages to a very large amount. They were first advertised to be sold on the 3d of January, and the Sheriff states in his return, that on that day, by agreement of the parties, the plaintiff and defendants, the appraisement of the property was waived and dispensed with, also the formality of reading the advertisement and the certificate of mortgages, and the property required to be readvertised on twelve months' credit. It was accordingly offered for sale on the 7th of February, 1842, and there being no bid made for an amount over and above the special mortgages, no sale was made, and there ended the attempt to satisfy the plaintiffs' execution out of the incumbered real estate surrendered by the defendant in execution. In the mean time, the Dennistouns had issued their two executions, and the Sheriff had the three executions in his hands on the 8th of January. Nothing had then been done with the executions in favor of the Dennistouns, and as it has been stated, he had released the seizure first made of the sugar and molasses under the plaintiffs' execution, and had under seizure to satisfy the writ, a plantation and slaves, so largely incumbered with mortgages, that, as the result showed, it was impracticable to make any sale of it. On that day, the 8th of January, the plaintiffs required him to make a seizure of 152 barrels of molasses, at the railroad depot, which he did; and at the hour of 1 o'clock, A. M., of the following day, the executions of the Dennistouns were levied on the 152 barrels of molasses which had been previously seized under the plaintiffs' writ, and also on the plantation and slaves, with 450 hogsheads of sugar and 45,000 gallons of molasses. At 10 o'clock of the same day, on the demand of the plaintiffs, the Sheriff made a seizure under their writ of the same 152 bbls. of molasses which had been seized irregularly the day before, and also of the sugar and molasses on the plantation, which he had levied on for the Dennistouns, at one o'clock of that day. The sugar and molasses were afterwards sold under the three several writs on twelve months credit, not having brought two thirds of the appraisement on the first offering—they were adjudicated to A. & J. Dennistoun & Co. for $19,760. No bond appears to have been taken from the Dennistouns, and nothing further was done by the Sheriff until the 20th of May,

65

H. Lynch & Co.
*v.*
Leckie.

after the institution of this suit, when he returned the plaintiffs' execution, stating in his return substantially the above facts, and that as the sale was made under those several writs, and *Dennistouns & Co.* claimed a privilege on the whole proceeds of the sale, he should wait a decree of the court ordering him to pay over the proceeds to the creditors legally entitled to them. It further appears that the sugar and molasses, after being adjudicated to the *Dennistouns*, was shipped to them in New Orleans, and sold for $25,234 77, and that the proceeds were placed in general account to the credit of *Mc Waters*. *A. & J. Dennistoun & Co.*, on the 14th of January, 1851, gave the Sheriff an indemnifying bond to protect him from any loss or injury, and they are only parties to this suit, as warrantors by that bond.

It is first contended, that the failure of the Sheriff to return the execution on or before the return day, has rendered him responsible under Art. 767 of the Code of Practice. Such would have been the consequence if the plaintiffs had not themselves instructed him to make the seizures of the 9th of January, which made it necessary for him to retain the writ beyond the return day, in order to effect the sale.

The second ground relied on to render the Sheriff responsible, is the release which he made of the first seizure. We think the objections urged by the defendants that there was no actual seizure of the 170 hhds. of sugar, is one which cannot be listened to as coming from the Sheriff—it was his duty to have taken possession of the sugar, and after notifying the debtor in the execution that he had made the seizure, it is too late for him to deny that there was one. It is next urged, that the defendant in execution has a right, by Art. 649 C. P. to point out the property he wishes to be seized and that he cannot be deprived of that right as long as the Sheriff has not advertised for sale the goods seized. We are of opinion the Sheriff has no right to release a seizure and accept a surrender of property thus pointed out, without using due diligence to ascertain whether the property offered to him is in such a condition as to afford a reasonable prospect of its being made available to satisfy the writ in his hands. 3d. But it is contended that the plaintiffs, by their subsequent conduct, adopted the acts of the Sheriff—that by attending the sale of the plantation and consenting to dispense with the appraisement and other formalities, and joining the debtor in the execution in requiring the property to be re-advertised for sale without those formalities, and by causing subsequent seizures to be made, they waived any right they might have had to hold him responsible for his previous acts. On this point, we are of opinion that the conduct of the plaintiffs' has produced that effect,"and that the Sheriff cannot be held liable on the ground of having released the first seizure.

The third ground of liability is, that the seizures of the 9th of January, should be considered as made at one and the same moment, and that if the plaintiffs' seizure made on that day is placed on an equal footing with those of the *Dennistouns*, there would have been a sufficient amount on a *pro rata* division of the proceeds of the sale made under all the writs to satisfy that of the plaintiffs. This ground, we think, must prevail. The Sheriff must have been aware on the 9th of January, that he had driven the plaintiffs to a fruitless attempt to make their money out of the plantation and slaves, because he is presumed to have been in possession of the certificate of mortgages on the third day of January, when he was to have first offered the property for sale: that certificate made it manifestly impossible that the plaintiffs could

realize any thing by the seizure then made under the plaintiffs' writ. The Sheriff had been previously remonstrated with for releasing a seizure of personal property sufficient to satisfy the judgment, and accepting in its stead property which could not be sold, and, under those circumstances, to permit him by a midnight seizure in favor of another creditor, to give him a preference over one whose writ had been so much longer in his hands, on all the available property of the debtor that remained, would be not only inequitable, but, as a precedent, would justify almost any degree of favoritism which a Sheriff might choose to exercise in the discharge of his official duties.

A great deal has been said in argument, on the subject of a privilege asserted for *A. & J. Dennistoun*, on this fund, for supplies to the plantation. No such privilege has been claimed by the *Dennistouns* in this suit, and the Sheriff has no right to make use of that as a defence—it is his duty to pay over the money he has made on an execution, to the plaintiff in the writ, unless by order of the court, on a claim so set up by a third party, he is restrained from doing it.

The plaintiffs are entitled to a judgment against the defendant, *Leckie*, for the full amount of their claims.

The sureties on the Sheriff's bond are also before us. The additional defence set up by them is, that these acts of the Sheriff were not committed during the term of office when they were his sureties. The bond bears date the 4th day of December, 1847, and is conditioned for the faithful performance by *Leckie*, of the duties of the office of Sheriff, to which he had been elected. His term of office was fixed by the Constitution at two years, and it commenced on the 1st Monday of November, 1847—two terms of the office had consequently elapsed, and the third term was entered upon at the date of the plaintiffs' execution being issued. The Act of the Legislature of 1837, provides that Sheriffs shall continue to perform the duties of their office until their successors, or themselves in case of reappointment, shall be inducted into office, by performing the formalities required by existing laws; so that no interruption may occur in the discharge of any public duty required by said officers, under the same penalties, bonds, obligations and securities, as were given and entered by them when they were first appointed to said offices. The law also gives to sureties the right to have themselves discharged from their bond at any time, and by virtue of these two provisions, it is contended that, as the sureties did not ask to have themselves discharged, it must be presumed that they were willing to continue bound as sureties of the Sheriff during the two terms subsequent to that for which they had originally bound themselves. It is not alleged in the petition, that *Leckie* was reappointed to the office for the term subsequent to that for which the bond was given, and there is no evidence in the record, that he acted as Sheriff during the second term. The acts complained of, commenced during the third term, and without either allegation or proof to that effect, we cannot presume that the Sheriff was reappointed for both of these terms, and failed to have himself regularly inducted into office by performing the formalities required by law. It was essential to allege and prove that the liabilities of the sureties had been extended beyond the first term ; facts, the existence of which, the court cannot presume. We think the plaintiffs have failed to make out the case against the sureties.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed, except as regards the defendants, *William C. James, Robert G. Leckie, Ralph Smith, Samuel W. Henasie,* and *Henry M. Hyams ;* and

H. LYNCH & CO.
*v.*
LECKIE.

H. LYNCH & Co.
      v.
    LECKIE.
that in regard to them, the judgment of the court below be reversed, and judgment rendered in their favor, as in case of non-suit, and that the costs of this appeal be paid in equal proportion by the plaintiffs and appellants, except the sureties of *Leckie.*

SAME CASE—ON AN APPLICATION OF DEFENDANT FOR A REHEARING.